United States Bankruptcy Appellate Panel of the Ninth Circuit

Docket No. WW-24-1001

Bk. No. 23-41097-BDL

In re:

ERIN SHARP,

Debtor

VITRUVIAN DESIGN, LLC,

Appellant

v.

ERIN SHARP

Appellee,

APPELLEE'S BRIEF

DAVID CARL HILL, ESQ.
WSBA No. 09560
*Attorney for Debtor/Appellee*
Richmond Hill, PLLC
1521 SE Salmonberry Way, Ste. 135
Port Orchard, WA 98366
(360) 876-5015

**CERTIFICATION REQUIRED BY BAP RULE 8010(A)-l(B)**

The undersigned certifies that the following parties have an interest in the outcome of this appeal. These representations are made to enable judges of the Panel to evaluate possible disqualifications or recusals:

*Vitruvian Design, LLC - buyer at foreclosure sale*
*Erin Sharp -- debtor*
*Midland Mortgage -- creditor*
*US Department of Housing and Urban Development -- creditor*

Dated this March 22 , 2024
Law Office of David Carl Hill

ls/David Carl Hill
David Carl Hill, WSBA #5960

**CERTIFICATION REQUIRED BY BAP RULE 8010(A)-l(C)**

**WW-09-1020, WW-09-1030 (Cross Appeals)**
**In re Michael Lababit et ex.**

The undersigned certifies that the following are known related cases and appeals:

*Bankruptcy Case No. 23-41097-BDL; In re Sharp*

*BAP Case No WW-24-1001; Vitruvian Design, LLC v. Erin Sharp*

Dated this March 22 2024
Law Office of David Carl Hill

ls/David Carl Hill
David Carl Hill, WSBA #5960

TABLE OF CONTENTS

TABLE OF AUTHORITES ............................................................... .iv

I.    BASIS OF APPELLATE JURISDICTION ................................... 1

II.   STATEMENT OF FACTS .......................................................... I

III.  STATEMENT OF ISSUES ......................................................... 2

IV.   ARGUMENT ............................................................................. 3

      A    ........................................................................................ 3

      B    ..................................................................................... 13

V.    CONCLUSION ........................................................................ 15

TABLE OF AUTHORITIES

WASHINGTON STATE CASES

Altabet v. Momoe Methodist Church, 777 P.2d 544, 54 Wn.App. 695 (Wash. App. 1989) ...................................................................................................................7

Biles-Coleman Lumber Co. v. Lesamiz, 302 P.2d 198, 49 Wn.2d 436 (Wash. 1956) ....... 7

Diimmel v. Morse, 36 Wash.2d 344,347,218 P.2d 334 (1950)........................................ 7

Tacoma Hotel, Inc. v. Morrison & Co., Inc., 193 Wash. 134, 74 P.2d 1003 (1938) .......... 7

Weldon v. Feldman, No. 53313-4-I (WA 1/3/2005), No. 53313-4-1 (Wash. Jan 03, 2005 ...................................................................................................................12

FEDERAL CASES

Alliance Mortg. Co. v. Rothwell, 10 Cal.4th 1226, 1236, 44 Cal.Rptr.2d 352, 900 P.2d 601 (1995) •••••••••••••••••••••••••••••••••••••••••••• ..................... 9

Bank of Maui v. Estate Analysis. Inc. 904 F.2d 470,472 (9th Cir. 1990) ....................... 13

Benedor Corp. v. Conejo Enters., Inc. (In re Conejo Enters., Inc.), 96 F.3d 346, 351 (9th Cir. 1996) ....................................................................................................... 6

Butner v. United States, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) ............... 6

Carpenters Local Union No. 26 v. U.S. Fid. & Guar. Co., 215 F.3d 136, 142 (1st Cir. 2000) ....................................................................................................... 13

Coleman Oil Co. v. Circle K Corp. (In re Circle K Corp.), 127 F.3d 904, 909 n. 4 (9th Cir.1997) ....................................................................................................... 12

2 Collier on Bankruptcy ,i 108.03[3] (15th ed. rev.2007) ............................................. 13

Gentile v. DeGiacomo (In re Gentile), 492 B.R. 580,585 (1st Cir. BAP 2013) .............. 13

H.R.Rep. No. 95-595, 95th Cong ......................................................... 12,14

In re Eternal Hills Mem'l Gardens & Funeral Home. Inc., 631 B.R. 756, 761 (Bankr. D. Or. 2021) ....................................................................................................... 7

In re Fairbanks, No. 3:20-BK-42304-BDL, 2021 WL 3578937 (B.A.P. 9th Cir. Aug. 12, 2021 ) .......................................................................... 3,4,6,7,8,9, 15, 16,17,18

In re Frazer, 377 B.R. 621 (B.A.P. 9th Cir. 2007) ........................................................ 12

In re Frazer, 377 B.R. 621, 631-32 (B.A.P. 9th Cir. 2007) .............................................. 13

In re Johnson, 513 B.R. 364 (Banla. W.D. Wis. 2014) ................................................... 14

In re Johnson, 513 B.R. 364, 370–71 (Banla. W.D. Wis. 2014) ...................................... 15

In re Mila, Inc., 423 B.R. 537 (B.A.P. 9th Cir. 2010) .......................................................... 6

In re Richter, 525 B.R. 735, 741 (Banla. C.D. Cal. 2015) ............................................. 4,9

In re Vertullo, 610 B.R. 399,408 (B.A.P. 1st Cir. 2020 ............................................ 13,14

In re York, No. 16-01964-FPC13, 2016 WL 6157432, (Banla. E.D. Wash. Oct. 21, 2016) ..................................................................................................................... 9,10,11

Knapp v. Doherty, 123 Cal.App.4th 76, 87, 20 Cal.Rptr.3d 1 (2004) .............................. 9

Moody, 734 F.2d at 1215-16 ........................................................................................... 12

Oregon v. Braker (In re Braker), 125 B.R. 798, 799 (9th Cir. BAP 1991) ....................... 6

United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) .................................. 6,15

United States v. Rodriguez-Pacheco, 475 F.3d 434,441 (1st Cir. 2007) ........................ 13

United States v. Whiting Pools, Inc., 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) ............................................................................................................................... 13

Wilmington Savings Fund Society. FSB v. Fairbanks, BAP No. WW-21-1019-FBS, Bk. No. 3:20-bk-42304-BDL (Filed August 12, 2021) ............................................................. 8

**STATE STATUTES**

RCW 6.13.010 ..................................................................................................................... 2

RCW 6.21.120 ............................................................................................................... 11,12

RCW 6.23.020 ................................................................................................................... 11

RCW 6.23.040(2) .............................................................................................................. 12

RCW 6.23.060 .............................................................................................................. 11,12

RCW 61.24.050 .................................................................................. 8

RCW 61.24.050(1) ............................................................................. 8

RCW 64.04.010 .............................................................................. 7,8

RCW 65.08.070 ................................................................................ 7

### FEDERAL STATUTES

11 U.S.C. § 108(b) ............................................................. 9,10,12,14,15

28 USC §158 (a) (1) ........................................................................ 1

28 USC §158 (b) (1) ........................................................................ 1

28 USC §158 (c) (1) ........................................................................ 1

Fed.R.Bankr. P.8002 ...................................................................... 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

1

2          I.JURSIDICTIONAL STATEMENT

3     The Appellant timely filed its Notice of appeal on January 2, 2024 pursuant to

4 Fed.R.Bankr. P.8002. Neither party elected to refer the matter to The United States

5 District Court. Therefore the United States Bankruptcy Appellate panel of the Ninth

6 Circuit (quote BAP") has jurisdiction under 28 USC §158 (a) **(1)**, (b) 1), and (c) **(1)**.

7

8          II.STATEMENT OF ISSUES

9 1.    Did the Bankruptcy Court err in denying Vitruvian's Motion for Relief from Stay

10 pursuant to the limitation on debtor's right to cure the default as set forth in 11 USC

11 §1322(c)(l)?

12 2.    Did the Bankruptcy Court err in denying Vitruvian's Motion for Relief because

13 Debtor failed to redeem the property pursuant to 11 USC §108 (b)?

14

15

16          III.STATEMENT OF THE CASE

17     A.      Pre-filing Factual Background

18

19     Erin Sharp is the single mother of three children. She is the owner of the real

20 property located at 391 E. Rainier Drive, Allyn, Washington. (App. 107).

21     In October of 2021, debtor received a Court Summons to pay her past due HOA dues. This

summons stated that if she failed to take care of her past due debt to Lakeland Village they would

take action to foreclose on her property. (App. 107).

     Shortly before the complaint was filed, Erin was the victim of a domestic violent assault on

22 herself and her daughter. This was a very traumatic event, and She did not remember a lot from

23 that period of time. At the time she received the summons regarding her HOA dues, she had also

received a summons on the domestic violence case and became consumed with that case. She was distraught over the traumatic events and from trying to navigate the judicial system. With all of that going on she failed to recall that she had also received a summons on her HOA dues. (App. 107-108).

Subsequent to the entry of the judgement debtor became unemployed and fell behind on her mortgage. After she found new employment she sought ways to reinstate her mortgage. She applied for a loan modification through her lender and qualified for a partial modification loan through the Department of Housing and Urban Development. It does not appear that either Midland or HUD performed a title search. Presumably, had either done so, the foreclosure sale would have been addressed. HUD subsequently recorded a deed of trust on November 28, 2022.(see attached Exhibit A). Erin recommenced mortgage payments in December, 2022 and remains current. (App. 108).

Erin only became aware of the foreclosure sale on June 8, 2023. She spent most of the month of June trying to find out what had happened and what she needed to do. When it became clear that the sale had occurred she filed a notice of intent to redeem. This case followed. (App. 108).

B. Post Filing Events

Erin Sharp filed for relief under Chapter 13 of the bankruptcy code on July 10, 2023. In connection there with she filed her schedules of assets and liabilities, which included her homestead property located at 391 E. Rainier Drive, Allyn, Washington. (App. 109). She valued her home at $521,200. The home is subject to a first mortgage with Midland Mortgage in the approximate amount of $221,700 and a junior mortgage in favor of the US Department of Housing and Urban Development in the amount of $38,000. Pursuant to Schedule C of the petition, she claimed the Washington homestead exemption under

RCW 6.13.010, et seq. (App. 51). She also filed a Plan which provided for a payment to the homeowners association. (App. 90). On July 10, 2023, the Clerk filed Official Form 3091-Notice of Chapter 13 Bankruptcy Case. (App. 210-211).The notice scheduled the 341 hearing for August 10, 2023 and hearing on confirmation for September 6, 2023. (App. 211).

Vitruvian objected to the initial plan on September 15, 2023 and separately filed a motion for relief from stay on October 3, 2023. (App. 99-106). In response, Ms. Sharp asserted that she retained titled interest in the property, which made that property and assets of the bankruptcy estate. (App. 108-110).She also subsequently filed an amended plan which proposed to pay the Vitruvian within 30 days of confirmation. (App. 118-122).

The court heard both the motion for relief from stay and debtor's motion to confirm the amended plan on November 8, 2023. Judge Lynch, after listening to argument from both counsel for Erin Sharp and Vitruvian, made several observations. He noted:

I'm assuming Vitruvian is pretty sharp at what it does. It's bid on a very small – an $8,000 homeowners association liability and is probably cutting a fat hog on this property. When you start talking about socially beneficial behavior, I get a little bit – I react poorly to that argument. (App. 27-28).

The Court then addressed the argument and stated:

If you read the BAP decision – I don't know if you looked at that, Mr. Muchinsky – it does suggest that even though you can't cure and maintain, that there might be a solution out there. And I don't mean to say that that – that the *Fairbanks* case, which is obviously a non-judicial foreclosure – that that – you could make an argument that it's not apposite to your client's situation.

Judge Lynch denied confirmation of the amended plan and directed Debtor to file a

1    feasible plan within 14 days, which Plan was filed shortly thereafter.(App. 164-170).  He

2    also continued the Motion for Relief from Stay.

3

4        Judge Lynch considered the Motion to Amend the Plan and the continued Motion

5    for Relief from stay on December 14, 2023.  He considered further argument.  Judge

6    Lynch then analyzed the case in light of this Courts decision in Fairbanks.  In a very

7    lengthy oral opinion, Judge Lynch stated:

8

9        At the time the bankruptcy was filed, the redemption period under the judicial
         foreclosure of the HOA lien had not expired.  The debtor retained, not only legal
10       title, but the rights in the property and  the right to redeem the property. While the
         debtor may be prohibited from a cure and maintain provision after a foreclosure
11       sale, she may not be prohibited from other options, 15 including, under Fairbanks,
         paying off a bidder at the foreclosure sale.
12
         While the Richter decision is a well-reasoned decision about California law in the
13       bankruptcy context, it is not the last word about Washington law.  The debtor,
         having filed a Chapter 13 after the foreclosure sale but before the expiration of a
14       redemption period, has certain rights under Chapter 13 to propose a plan to pay that
         amount.
15
16       The Court does find particularly troubling the Vitruvian argument that the
         proposed plan is inequitable to it.  The debtor is not only paying its full investment
17       in the property – "its" meaning Vitruvian's full investment in the property; that is,
         the amount bid at the sale and the utility paymentswhich it advanced after it
18       became holder of the redemption rights and interest on the amount bid at the sale
         and a significant amount on top of that, which would not only cover the attorney's
19       fees incurred in this case, even though it's not clear at all that Vitruvian would be
         entitled to recovering attorney's fees, and even though it turns out Vitruvian is not
20       going to be the successful party in these proceedings.  The proposal is to pay
         60,000, which exceeds the amount bid, the interest, the utilities, and the attorney's
21       fees.  And the debtor is proposing to pay Vitruvian – pay to Vitruvian, over and
         above the 60,000, the residual funds remaining on hand with the Mason County
         Superior Court, which I'm led to believe will be at least 15,000.

         The Court concludes that this is not a cure and maintain plan.  The Fairbanks
22       Court recognized that a plan can address a claim in other ways.  The plan proposes
         to pay the full amount owed to Vitruvian and additional funds as part of a
23       redemption from the judicial foreclosure . . . .

                                                -4-

With respect to the motion for relief from stay, that motion is denied at this time. There is insufficient evidence that there's no equity in the property. In fact, there is a strong suggestion that there is equity in the property. The debtor has made an adequate case to show that the property, which is her home, is necessary for her effective reorganization. And it has shown that Vitruvian, as the holder of the redemption rights, will either obtain the property for the price it paid at the sale or will receive the full amount of its bid and all of the other amounts owing, plus an additional close to $30,000, maybe even $35,000. I haven't done the precise math, but a significant amount over and above what it bid covering accruing interest, reimbursement of utilities bills advanced, and additional amounts, all of which, in the Court's mind, constitutes adequate protection of Vitruvian's interest. (App. 198-201).

On December 20, 2023, Judge Lynch issued his formal order denying Vitruvian's Motion for Relief from Stay. (App. 164-165).The court further denied confirmation of the pending Plan and directed Erin to file a new Plan that allowed Vitruvian to seek an Order for Relief from Stay if the lump sum was not paid pursuant to the Plan. The amended plan was duly filed on December 20, 2023 (App. 205-209) and Judge Lynch confirmed the Plan on December 28, 2023 (App. 217-218).

The parties stipulated in a joint motion to supplement this record that Debtors father timely tendered $60,000 to Vitruvian, which sums are held in the conclusion of this appeal. In addition, debtors counsel timely moved for an order directing Mason County Superior Court to release the surplus funds to debtor's counsel to be held in trust for Vitruvian upon the completion of this appeal.(App. 219-220). On January 29, 2023 Judge Monte D Cobb, Superior Court Judge for Mason County issued issued an order directing the clerk to release the funds held in the registry of the court to debtor's counsel to be held in trust for and further ordered that the underlying"…judgment be satisfied in full and that the defendant has redeemed the real property located at 391 E. Rainier Dr., Allyn, Mason County, Washington. . . . "(App. 219, Exh. A)

# IV. STANDARD OF REVIEW

This Court previously set for the standard of review applicable to the present case.

This Court stated:

> "The decision to grant or deny relief from the automatic stay is committed to the sound discretion of the bankruptcy court, and we review such decision under the abuse of discretion standard." *Benedor Corp. v. Conejo Enters., Inc. (In re Conejo Enters., Inc.)*, 96 F.3d 346, 351 (9th Cir. 1996).
> To determine whether the court abused its discretion, we follow a two-step process. "First, we determine de novo whether the bankruptcy court identified the correct legal rule to apply to the relief requested." *In re Af!LA. Inc.*, 423 B.R. at 542. "If it did, we next determine whether the bankruptcy court's application of the correct legal standard to the evidence presented was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id.* (quoting *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)) (internal quotation marks omitted). "If any of these three apply, only then are we able to have a 'definite and firm conviction' that the district court reached a conclusion that was a 'mistake' or was not among its 'permissible' options and thus conclude that the court abused its discretion by making a clearly erroneous finding of fact." *Hinkson*, 585 F.3d at 1262.

In re Fairbanks, No. 3:20-BK-42304-BDL, 2021 WL 3578937, at *2 (B.A.P. 9th Cir. Aug. 12, 2021)

In applying the above principles or the case at hand, this Court must affirm Judge Lynch's order denying Vituvian's Motion for Relief from Stay unless it finds that the confirmation order was not warranted under the facts and law and therefore an abuse of discretion.

# V. ARGUMENT

## A    REAL PROPERTY RIGHTS ARE DETERMINED BY STATE LAW.

The Bankruptcy Code creates a delicate balance between state and federal law. State law governs the laws regarding ownership and transfers of property. Federal law, as set out in the Bankruptcy Code, governs the administration of those assets within the bankruptcy estate.

In bankruptcy, the estate's "[p]roperty interests are created and defined by state law." *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). The Bankruptcy Code "neither creates nor enhances" the property interests brought into the bankruptcy estate, and the trustee takes the real property subject to those state law limitations. *See Oregon v. Braker (In re Braker),* 125 B.R. 798, 799 (9th Cir. BAP 1991)

In re Eternal Hills Mem'l Gardens & Funeral Home. Inc., 631 B.R. 756, 761 (Banlcr. D. Or. 2021)

In Washington, title to real property is transferred by deed. This rule applies to both voluntary and involuntary transfers. The purchaser may have a beneficial interest in property prior to the issuance of the deed by contract or various judicial or non-judicial orders, but title remains in the owner until a deed is actually recorded.

RCW 65.08.070 [cf. Rem.Rev.Stat.§ 10596-2] provides, in part:'A conveyance of real property * * * may be recorded in the office of the auditor of the county where the property is situated. Such a conveyance not so recorded is void as against any subsequent purchaser * * * in good faith and for a valuable consideration from the same vendor, his heirs, or devisees, of the same real property or any portion thereof whose conveyance is first duly recorded.* * * ...
Biles-Coleman Lumber Co. v. Lesamiz, 302 P.2d 198, 49 Wn.2d 436 (Wash. 1956)

RCW 65.08.070 provides that conveyances of real property may be recorded and that "[a]n instrument is deemed recorded the minute it is filed for record." The purpose of the statute is to make a deed recorded first superior to any unrecorded conveyance of the property unless there is actual knowledge of an unrecorded transfer, Tacoma Hotel, Inc. v. Morrison & Co., Inc., 193 Wash. 134, 74 P.2d 1003 (1938); a subsequent purchaser, without notice of the existing equities, is not required to search outside the record to inquire about them. Diimmel v. Morse, 36 Wash.2d 344,347,218 P.2d 334 (1950).
Altabet v. Monroe Methodist Church, 777 P.2d 544, 54 Wn.App. 695 (Wash. App. 1989)

This Court addressed the issue in In re Fairbanks, No. 3:20-BK-42304-BDL, 2021 WL 3578937, at *3 (B.A.P. 9th Cir. Aug. 12, 2021).

The first sentence of this statute provides that title to real property sold at the foreclosure trustee's sale passes to the purchaser when the foreclosure trustee

delivers the deed. This is consistent with another Washington statute, RCW 64.04.010, which provides that a deed is generally necessary to pass title to real estate. Thus, the transfer to the purchaser is not completed, and the owner retains at least some rights in the property, until the foreclosure trustee executes and delivers the deed.

In re Fairbanks, No. 3:20-BK-42304-BDL, 2021 WL 3578937, at *3 (B.A.P. 9th Cir. Aug. 12, 2021)

Thus, in the context of a foreclosure sale, Washington adopts the "deed delivery rule", rather than the "gavel rule."   It is a misnomer to characterize this as a minority rule.  As noted above, each state determines the laws by which property is transferred within the state.  Courts who adopt the "deed delivery" rule are merely following the law of the state regarding the transfer of assets.

In  Wilmington Savings Fund Society, FSB v. Fairbanks, BAP No. WW-21-1019-FBS, Bk. No. 3:20-bk-42304-BDL (Filed August 12, 2021), this Court  confirmed the "deed delivery rule."

The Court went to great lengths to analyze the case at hand in relation to the effect of a foreclosure sale.   The BAP agreed with this Court that title passes on recording, rather than on sale.  The Court stated:

The relevant statute is Revised Code of Washington ("RCW") 61.24.050. It provides:
**Upon physical deliver)'** of the trustee's deed to the purchaser ... the trustee's deed shall **convey all of the right, title, and interest in the real and personal property sold** at the trustee's sale.... Except as provided in subsection (2) of this section, if the trustee accepts a bid, then the **trustee's sale is final** as of the date and time of such acceptance **if the trustee's deed is recorded within fifteen days** thereafter.
RCW 61.24.050(1) (emphases added).
The first sentence of this statute provides that title to real property sold at the foreclosure trustee's sale passes to the purchaser when the foreclosure trustee delivers the deed. This is consistent with another Washington statute, RCW 64.04.010, which provides that a deed is generally necessary to pass title to real estate. Thus, the transfer to the purchaser is not completed, and the owner retains at least some rights in the property, until the foreclosure trustee executes and delivers the deed.

Hence, we conclude from the first sentence of RCW 61.24.050(1) that Ms. Fairbanks retained some interest in the property that had not yet passed to the buyer when she filed her petition. That interest, whatever its nature, became property of the bankruptcy estate.

In re Fairbanks, No. 3:20-BK-42304-BDL, 2021 WL 3578937, at *3 (B.A.P. 9th Cir. Aug. 12, 2021)

Appellant argues that the Bankruptcy Court ruling in In re Richter, 525 B.R. 735, 741 (Bankr. C.D. Cal. 2015) should be applied in the present case. However, that case is based on the "gavel rule" and is derived from the California statutes. The Courts stated:

Before the property is sold in the foreclosure sale, the owner has an equitable right of redemption (or equity of redemption), which allows him to pay the entire debt owed to the foreclosing lienholder "at any time prior to the sale **to avoid loss of the property.**" *Knapp v. Doherty.* 123 Cal.App.4th 76, 87, 20 Cal.Rptr.3d 1 (2004) (citing Cal. Civ.Code §§ 2903, 2905).... Following the foreclosure sale, a statutory right of redemption (or statutory redemption) may be available under certain circumstances, which gives the now-former owner "an opportunity **to regain ownership** of the property by paying the foreclosure sale price [to the purchaser], for a period of time after foreclosure." *Alliance Mortg. Co. v. Rothwell.* 10 Cal.4th 1226, 1236, 44 Cal.Rptr.2d 352, 900 P.2d 601 (1995).
In re Richter, 525 B.R. 735, 741 (Bankr. C.D. Cal. 2015)(emphasis added)

The "gavel rule is clearly set forth in that decision. In California, once the sale occurs, the debtor loses ownership of the real property, but retains the ability to **"regain ownership** of the property by paying the foreclosure sale price" In re Richter, 525 B.R. 735, 741 (Bankr. C.D. Cal. 2015).

In contrast to California law, ownership of Washington real property continues to vest in the titled owner until a foreclosure deed is issued. Judge Lynch states:

While the Richter decision is a well-reasoned decision about California law in the bankruptcy context, it is not the last word about Washington law. The debtor, having filed a Chapter 13 after the foreclosure sale but before the expiration of a redemption period, has certain rights under Chapter 13 to propose a plan to pay that amount. (App.198).

-9-

Appellant cites <u>In re York,</u> No. 16-01964-FPC13, 2016 WL 6157432, at *2

(Bankr. E.D. Wash. Oct. 21, 2016) in support of the strict application of Section

108(b) to redemptions.  The reliance on this decision is misplaced.

Judge Corbett noted:

> Although the scope of property included in the bankruptcy estate is broad, and
> includes most of the debtor's legal and equitable interests in property, some
> exceptions exist. *See* § 541(a) and (b). Relevant to this discussion is the subsection
> raised by Pawn 1, § 541 (b)(8), which provides that property of the estate *does not
> include:*
> (8) ... any interest of the debtor in property where the debtor pledged or sold tangible
> property ... as collateral for a loan or advance of money given by a person licensed
> under law to make such loans or advances, w h e r e -
> (A) the tangible personal property is in the possession of the pledgee or transferee;
> (B) the debtor has no obligation to repay the money, redeem the collateral, or buy
> back the property at a stipulated price; and
> (C) neither the debtor not the trustee have exercised any right to redeem provided
> under the contract or State law, in a timely manner as provided under State law and
> section 108(b)[.]2
> If all three elements are satisfied, then the Collateral at issue is not part of the estate
> and is not protected by the automatic stay.

<u>In re York,</u> No. 16-01964-FPC13, 2016 WL 6157432, at *2 (Bankr. E.D. Wash. Oct.
21, 2016)

Judge Coirbett then limited his ruling with the following comment:

> …that its decision is applicable to this narrow set of facts. The court is mindful that
> § 1322(b)(3) allows modification of rights of secured claim holders to "provide for
> the curing or waiving of any default" and this court has not foreclosed the possibility
> that a Chapter 13 plan confirmed prior to the expiration of the statutory redemption
> period may entitle a Chapter 13 debtor to pay the redemption amount over the life of
> his or her plan. However, such facts are not present in this case. Prior to the
> expiration of the Redemption Dates, the debtor did not propose a plan that provided
> for the redemption of the Collateral. Indeed, prior to the expiration of the redemption
> period, Pawn 1 emailed both the trustee and attorney for the debtor inquiring
> whether debtor planned to redeem the property. [ECF No. 29]. The trustee responded
> that there were no plans to redeem the property. Additionally, although the debtor
> alleges that "Debtor has made provision for the property in the Chapter 13 plan," the
> court finds there is no provision in the plan for this property. [ECF No. 35, p. 4].

-10-

1    Pawn 1 is not even listed as a secured creditor on debtor's schedules.

2    In re York, No. 16-01964-FPCB, 2016 WL 6157432, at *4 (Bankr. E.D. Wash. Oct.
     21, 2016)
3

4        The key difference between York and the present case is the nature of the

5    property interest itself. Mr. York delivered physical possession of the non-titled assets to
6
     the pawnshop. Presumably a similar result would occur if a bank, as legal title holder of a
7
8    vehicle, repossess the vehicle. In both instances the dispossessed debtor must take

9    appropriate steps within certain time frames to retake possession of the asset

10       Redemption in the context of real property is different from personal property

11   redemptions under Washington law. The purchaser at a judicial foreclosure sale may
12
     have an equitable interest in the real property. However title remains with the debtor until
13
14   such time as a statutory process is complete and a deed is issued by the sheriff in favor of

15   the purchaser. If the debtor files for bankruptcy relief before that process is completed,

16   the real property becomes an asset of the bankruptcy estate.

17

18
     B    THE DEBTOR RETAINS AN INTEREST IN REAL PROPERTY UNTIL A
19        DEED IS RECORDED DIVESTING HER OF ALL INTEREST IN THE
20        REAL PROPERTY

21   A judicial foreclosure in Washington is a multi-step process.  However, it is not

     complete until the sheriff issues a deed.  Debtor retains title to the property until the deed

     is recorded.

     Washington law states:
            If no redemption is made within the redemption period prescribed by RCW
22      6.23.020 or within any extension of that period under any other provision of this
23      chapter, the purchaser is entitled to a sheriffs deed; or, if so redeemed, whenever

                                          -11-

sixty days have elapsed and no other redemption has been made or notice given operating to extend the period for re-redemption, and the time for redemption by the judgment debtor has expired, the last redemptioner is entitled to receive a sheriffs deed as provided in RCW 6.21.120.

Wash. Rev. Code 6.23.060 Sheriffs deed-When issued (Revised Code of Washington (2024 Edition))

In addition, until the redemption period expires, the judgment debtor's interest, (ownership of the property), is superior to a lien of creditor. RCW 6.23.060 and 6.21.120. RCW 6.23.040(2) provides that when a judgment debtor redeems, the effect of the execution of sale is terminated and the estate of the judgment debtor is restored.12 By effectively extinguishing subsequent redemption rights of judgment creditors, RCW 6.23.040(2) also suggests the legislature considers a judgment debtor's ownership interest superior to a judgment creditor's interest.

Weldon v. Feldman, No. 53313-4-I (WA 1/3/2005), No. 53313-4-I (Wash. Jan 03, 2005)

At the date of filing, Erin Sharp continued to hold legal title to the property, subject only to the completion of all of the steps necessary for judicial foreclosure. Vitruvian held on the date of filing only an equitable interest in the property that dissolved when Ms. Sharp redeemed the property through the confirmed plan.

C   ANY CONFLICT BETWEEN 11 USC 108(B)(2) AND 11 USC 1322
     SHOULD BE RESOLVED IN FAVOR OF THE LATTER

When there is a conflict between the language and or the intent of two Code sections, the Court should look to the section that more specifically relates to disposition of property.

In re Frazer, 377 B.R. 621 (B.A.P. 9th Cir. 2007), The Ninth Circuit BAP addressed the conflict between sections 108(b) and 1322. The Court stated:

Chapter 13 is designed to facilitate debtor rehabilitation by providing a debtor with the ability to adjust his or her debts through a flexible repayment plan. See H.R.Rep. No. 95-595, 95th Cong. 118 (1977) reprinted in 1978 U.S.C.C.A.N 5963, 6079. Thus, in chapter 13, we look to the specific provisions of § 1322 to govern what a debtor may include in a chapter 13 plan to meet his or her needs . . . .

We conclude that the more specific cure provisions of § 1322, which govern chapter 13 plans, apply rather than the more general provision of § 108(b), which applies in

general to bankruptcy cases. *See. e.g., D. Ginsberg & Sons, Inc. v. Popkin,* 285 U.S. 204, 208, 52 S.Ct. 322, 76 L.Ed. 704 (1932) ("Specific terms prevail over the general in the same or another statute which otherwise might be controlling."); *Coleman Oil Co. v. Circle K Corp. (In re Circle K Corp.),.* 127 F.3d 904, 909 n. 4 (9th Cir.1997) ("The curing of defaults in an executory contract or unexpired lease is governed by section 365, not by the ... provisions of section 108(b)."); *Moody,* 734 F.2d at 1215-16 (same); 2 *Collier on Bankruptcy* 1108.03[3] (15th ed. rev.2007).

The Supreme Court's decision in *United States v. Whtnng Pools. Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), cannot be ignored. In *Whiting Pools,* the debtor had an interest in property, as of the date of filing bankruptcy, that a secured creditor seized prepetition. The Supreme Court concluded that the property was property of the estate that could be used on the condition that adequate protection be provided. *Id.* at 204, 103 S.Ct. 2309. The creditor must look to the Bankruptcy Code's adequate protection provision, rather than to its nonbankruptcy remedies. *Id.* The Supreme Court pointed out that the Bankruptcy Code "modifies the procedural rights available to creditors to protect and satisfy their liens" and that the protections it provides "replace the protection afforded by" nonbankruptcy law. *Id.* at 206-07, 103 S.Ct. 2309. These fundamental propositions inform the analysis regarding the implications of the Bankruptcy Code authority under § 1322 to cure defaults. The Supreme Court's *Whiting Pools* analysis is not consistent with postpetition insistence on strict compliance with a short-fused state law redemption procedure when a debtor is proposing to cure a default through a plan. Hence, it supports our conclusion that § 108 does not trump § 1322.

In re Frazer, 377 B.R. 621, 631-32 (B.A.P. 9th Cir. 2007)

The <u>Frazer</u> decision has not been overturned or modified by the Ninth Circuit BAP or the Ninth Circuit at large.

The binding effect of a BAP decision was addressed in <u>In re Vertullo,</u> 610 B.R. 399, 408 (B.A.P. 1st Cir. 2020). There the Court addressed the First Circuit BAP was bound to follow previous rulings of that court. The Court stated:

A related question is whether *we* are bound by prior decisions of *our* court. Although our First Circuit BAP has not declared as a formal jurisprudential rule that it is bound by its prior decisions, it has acknowledged that "fidelity" to precedent "promotes 'stability, predictability, and respect for judicial authority.' "[5] <u>Gentile v. DeGiacomo (In re Gentile).</u> 492 B.R. 580,585 (1st Cir. BAP 2013) (quoting <u>Gately v. Commonwealth of Mass.,</u> 2 F.3d 1221, 1226 (1st Cir. 1993)); <u>see also Carpenters Local Union No. 26 v. U.S. Fid. & Guar. Co.,</u> 215 F.3d 136, 142 (1st Cir. 2000) ("We value finality, stability, and certainty in the law, particularly in the field of statutory construction.") (citation omitted). Indeed, such stability was the impetus for

the creation of BAPs. See Bank of Maui v. Estate Analysis, Inc, 904 F.2d 470, 472 (9th Cir. 1990) (O'Scannlain, concurring).

The U.S. Court of Appeals for the First Circuit has stated that it is bound by its earlier decisions, "unless an exception exists to the principles of stare decisis." United States v. Rodriguez-Pacheco, 475 F.3d 434, 441 (1st Cir. 2007) (citation omitted). It explained:

The doctrine of stare decisis provides that courts must abide by or adhere to cases that have been previously decided and that a legal decision on an issue of law that is contained in a final judgment is binding in all future cases on the court that made the legal decision and all other courts that owe obedience to that court. In other words, the doctrine of stare decisis incorporates two principles: (1) a court is bound by its own prior legal decisions unless there are substantial reasons to abandon a decision; and (2) a legal decision rendered by a court will be followed by all courts inferior to it in the judicial system.

Id. (quoting 3 J. Moore et al., Moore's Manual-Federal Practice and Procedure § 30.10[1] (2006)). The First Circuit recognizes two exceptions to the stare decisis rule: (1) when an existing decision is "undermined by controlling authority, subsequently announced, such as an opinion of the Supreme Court, an en banc opinion of the circuit court, or a statutory overruling"; and (2) when "authority that postdates the original decision, although not directly controlling, nevertheless offers a sound reason for believing that the former panel, in light of fresh developments, would change its collective mind." Id. at 441-42 (citations omitted) (internal quotation marks omitted).

In re Vertullo, 610 B.R. 399, 408 (B.A.P. 1st Cir. 2020)

The Frazer decision has been cited favorably by other courts.    In In re Johnson, 513 B.R. 364 (Bankr. W.D. Wis. 2014) the Court stated:

The B.A.P. in Frazer also concluded that section 108(b) should not be read to curtail the general power to cure granted to Chapter 13 debtors. Id. at 631. Generally speaking, as described in the legislative history, the purpose of Chapter 13 is to support and promote the rehabilitation of financially distressed individuals. See id. at 631 (citing pllJn re Kokkinis. 22 B.R. 353, 354-55 (Bankr.N.D.Ill.1982); H.R.Rep. No. 95-595, 95th Cong. (1977), reprinted in 1978 U.S.C.C.A.N. 5963; S.Rep. No. 95-989, 95th Cong. (1978), reprinted in 1978 U.S.C.C.A.N. 5787). This goal is accomplished, in part, by granting the debtor "the ability to adjust his or her debts

-14-

**through a flexible repayment plan."** *Id.* (citing H.R.Rep. No. 95-595, 95th Cong. 118 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6079). The provisions that convey this ability are specific to the Chapter 13 context; they grant the debtor powers [*371] that are unavailable in other chapters of the Code. *See id.*

By comparison, section 108(b) is a provision of general applicability. *See id.* at 632. It is well-settled that where two statutes may conflict, specific provisions prevail over general provisions. *See id.* (citing *D. Ginsberg & Sons, Inc. v. Popkin,* 285 U.S. 204, 208, 52 S.Ct. 322, 76 L.Ed. 704 (1932)). Accordingly, "the more specific cure provisions of [section] 1322, which govern chapter 13 plans, apply rather than the more general provision of [section] 108(b), which applies in general to bankruptcy cases." *Id.* (citations omitted). In so finding, the B.A.P. held that **"the cure provisions of [section] 1322 afford Debtors a reasonable time to cure the default on the Contract.... Therefore, Debtors are entitled to cure the default through their plan and reinstate the debt."** *Id.* at 632.

In re Johnson, 513 B.R. 364, 370-71 (Bankr. W.D. Wis. 2014)(emphasis added)

Judge Lynch correctly determined that the more specific provisions, as well as the intent of 11USC §1322 were applicable, rather than the more draconian limitations of1 1 USC §108(b)(2).

D.    THE BANKRUTPCY COURT PROPERLY EXERCISED ITS DISCRETION IN DENYING APPELLANT'S MOTION FOR RELIEF FROM STAY

In Fairbanks this Court cited *United States v. Hinkson,* 585 F.3d 1247, (9th Cir. 2009) as the standard for reviewing discretionary rulings. In that case the Court stated: "Relief from the stay is a discretionary matter decided on a case-by-case basis." *Cannery Row Co. v. Leisure Corp. (In re Leisure Corp.),* 234 B.R. 916, 921 (9th Cir. BAP 1999). Reasonable minds could differ with the bankruptcy court's decision. But as a reviewing court, "we may reverse a discretionary trial court factual finding [only] ifwe are 'left with the definite and firm conviction that a mistake has been committed'" and "must give the district court's findings deference." *United States v. Hinkson,* 585 F.3d 1247, 1262 (9th Cir. 2009) (quoting *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395 (1948)).

-15-

1      This Court also cited <u>Fjeldsted v. Lien (In re Fjeldsted).</u> 293 B.R. 12, 21 (9th Cir.

2  BAP 2003). Although he issue in take case revolved around retroactive annulment of

3  the stay, rathe than relief from stay, the analysis can be equally applied to the present

4  case. This Court cited the following language in <u>Fjeldsted :</u>

5      A bankruptcy court has authority to make exceptions to, and to annul, the automatic
    stay under § 362(d). This authority includes annulment providing retroactive relief . .

6      . ." *Fjeldsted v. Lien (In re Fjeldsted),* 293 B.R. 12, 21 (9th Cir. BAP 2003). In

7      *Fjeldsted,* this Panel concluded "that the proper standard for determining 'cause' to
    annul the automatic stay retroactively is a 'balancing of the equities' test." *Id.* at 24

8      (quoting *Nat'l Envtl. Waste Corp. v. City of Riverside (In re Nat'l Envtl. Waste*

9      *Corp.),* 129 F.3d 1052, 1055 (9th Cir. 1997)). We set forth factors for bankruptcy
    courts to consider when deciding whether to annul the automatic stay.[4] *Id.* at 25.

10      <u>In re Fairbanks</u>, No. 3:20-BK-42304-BDL, 2021 WL 3578937, at *17 (B.A.P. 9th
    Cir. Aug. 12, 2021)

11

12      This Court, in its footnote, also set forth the <u>Fjelstad:</u>

13  The factors are as follows: (1) the debtor's number of filings; (2) whether, in a

14  repeat filing case, the circumstances indicate an intention to delay and hinder
creditors; (3) the extent of prejudice to creditors or third parties if the stay relief is

15  not made retroactive, including whether harm exists to a bona fide purchaser; (4)
the debtor's overall good faith (totality of circumstances test); (5) whether

16  creditors knew of the stay but nonetheless took action; (6) whether the debtor has
complied, and is otherwise complying, with the Bankruptcy Code and Rules; (7)

17  the relative ease of restoring parties to the status quo; (8) the costs of annulment to

18  debtors and creditors; (9) how quickly creditors moved for annulment, or how
quickly debtors moved to set aside the sale or violative conduct; (10) whether,

19  after learning of the bankruptcy, creditors proceeded to take steps in continued
violation of the stay, or whether they moved expeditiously to gain relief; (11)

20  whether annulment of the stay will cause irreparable injury to the debtor; and (12)

21  whether stay relief will promote judicial economy or other efficiencies. *Fjeldsted,*
293 B.R. at 25.

    The above factors strongly support Judge Lynch's order denying the Motion for

Relief from Stay. (1) This was Ms. Sharp's first bankruptcy filing. (2) She timely filed

22  her schedules and Plan. (3) Denial of the motion does not harm the bona fide purchaser.

23  (4) The debtor more than amply acted in good faith. (5) Not applicable. (6) Debtor is

compliance with the Bankruptcy Code and Rules. (7) The Plan easily restores the status quo. (8) Balancing the cost between Ms. Sharp and Vitruvian favors Ms. Sharp. (9) Vitruvian did not object to the Plan or move for relief from stay until well after the originally scheduled confirmation hearing. (10) Not applicable. (11) Granting Vitruvian's motion would cause Ms. Sharp irreparable harm due to the loss of her homestead. (12) Granting stay relief does not promote judicial economy.

In commenting on the above factors in <u>Fairbanks,</u> the Court observed:

> The court also contrasted the harm to the parties, noting that the third-party purchaser would receive his bid back from the foreclosure trustee or lender if the sale were rescinded, whereas annulment of the stay would cause the debtor to lose her home.

> The bankruptcy court identified the correct legal rule and based its decision to deny retroactive annulment of the automatic stay on facts in the record; therefore, we cannot say that its decision was an abuse of discretion.
> (Supra at 18)

In cases such as the matter before the Court, the Bankruptcy Judge must balance the equities between the competing parties. The judge exercises discretion to grant or deny the motion, based upon the record before him. In some cases the factual record clearly favors the moving party, especially where the debtor fails to provide a good faith plan to resolve the issue. Other cases are much closer. In Fairbanks, this Court remanded the Relief from Stay issue with directions that the bankruptcy court reevaluate the viability of any plan that could be presented by Ms. Fairbanks.

In contrast with Fairbanks, Judge Lynch was provided with ample evidence that the debtor could more than amply repay Vitruvian for its costs and attorneys fees together with a very significant dividend. Judge Lynch observed:

The Court does find particularly troubling the Vitruvian argument that the

proposed Plan is inequitable to it. The debtor is not only paying its full investment in the property- "its" meaning Vitruvian's full investment in the property; that is, the amount bid at the sale and the utility payments which it advanced after it became holder of the redemption rights and interest on the amount bid at the sale and a significant amount on top of that, which would not only cover the attorney's fees incurred in this case, even though it's not clear at all that Vitruvian would be entitled to recovering attorney's fees, and even though it turns out Vitruvian is not going to be the successful party in these proceedings. The proposal is to pay 60,000, which exceeds the amount bid, the interest, the utilities, and the attorney's fees. And the debtor is proposing to pay Vitruvian – pay to Vitruvian, over and above the ($)60,000, the residual funds remaining on hand with the Mason County Superior Court, which I'm led to believe will be at least ($)15,000. (App    p.    )

## VI.CONCLUSION

Judge Lynch did not abuse his discretion by denying Vitruvian's Motion for Relief from Stay. Judge Lynch correctly applied the principal set forth in this course decision in In re Fairbanks. At the time the case was filed, Ms. Sharp held legal title to the subject real property and, hence, that property became property of the bankruptcy estate and subject to administration under Chapter 13. Therefore the provisions of 11 USC § 1322, rather than 11 USC § 108 (b) are applicable to the present case . The plan is in the interest of all creditors and in particular more than adequately compensates the Appellant for the funds expended at the foreclosure sale, as well as his subsequent expenses and attorney's fees.

This court should, therefore, affirm the Vitruvian's motion for relief stay.

DATED this 21th day of March, 2023

ls/David Carl Hill
DAVID CARL HILL, WSBA #9560
Attorney for Appellee

-18-

# EXHIBIT A

## 2191053   Mason County WA

11/28/2022 08:32:58 AM    DEDTR
eRecorded  #182141  RecFee: $210.50  Pages: 7
FIRST AMERICAN TITLE



**When Recorded Mail To:**
*First American Title*
*FAMS - DTO RECORDING*
**3 FIRST AMERICAN WAY**
**SANTA ANA, CA 92707**

FAT Doc. No.: 14870009

Coun\)c MASON

**Document Title(s)**
PARTIAL CLAIM DEED OF TRUST
**Reference Number(s) of related documents:**
2067737

Additional Reference #'s on page *i*

Grantor(s) (Last, First, and Middle Initial)
SHARH/ERIN A

Additional Grantors on page

Grantee(s) (Last, First, and Middle Initiall
SECRETARY OF HOUSING AND URBAN DEVELOPMENT

Additional Grantees on page 2

**Legal** Description (abbreviated form: i.e. lot, block, plat or section, township, range, quarter/quarter)
LOT 10, PLAT OF LAKELAND VILLAGE NO. 8, MASON COUNTY, WASHINGTON.

Complete legal on page Z

**Asse**ssor's Property Tax Parcel/Account Number
122205600010

Additional parcel #'son page a

THE AUDITOR/RECORDER WILL RELY ON THE INFORMATION PROVIDED 0II THIS FORM. THE .IIBSPONSIBILITY FOR I'HB ACCURACY 01-'THI:; INDJ::XI:'IG I)WORMATION IS THAT 01-"fHJ:: L>OCI"MI::NT PREPARER.



After Recording Relum To:
Rushmore Loan Management Seivices LLC
ATTN: Collateral DepL
8616 Freeport Parkway, SUlte 100
Irving, TX 75063

_____ [Space Above This Line For Recording Data] _____

Loan No: 4402933554
FHA Case No.: 566-2053776•703

This Document Prepared B
TIM LIGHTFOOT
Rushmore Loan Mana          ices LLC
8616 FrMport Parkwa ,       1
Irving, TX 75063

## P RTIAL CLAIM DEED OF TRUST

Refet"enee nu  bers of related documents: 2067737
          onpa      of document

Grant  P

Be     lary:
       1. Secretary of Housing and Urban Development

Trustee: OLVIIPIC TITLE AND ESCROW

Assessor's Property Tax Parcel .Account Number{s): 122205600010

_  c  gal Description: THE LAND REFERRED TO IN THIS COMMITMENT IS LOCATED IN THE
   OUNTY   OF MASON, STATE OF WASHINGTON, AND DESCRIBED AS FOLLOWS: LOT 10, PLAT
   _  LAKELAND VILLAGE NO. 8, RECORDED IN VOLUME 10 OF PLATS, PAGES 17 AND 18,
RECORDS OF MASON COUNTY, WASHINGTON.



Whington **Pirtlll CblmDeecloF**ruat
1ci83700ZI14



ۧ(ₐₒₑ 1 ₒf 31

THIS PARTIAL CLAIM DEED OF TRUST ("Security Instrument")♦ ade this 12th day of October, 2022. The grantor is ERIN A SHARP (•Borrower"), whose addreso-39 RAINIER OR, ALLYN, WA 98524. The trustee is OLYMPIC TITLE AND ESCROW, ("Trulit whose' ess ls ,, •

The beneficiary is the Sectetary of Housing and an velopment, whose address is 451 Seventh Street SW, Waahlngton ¡ DC 20410 ("Lende..-). owes Lender the principal sum of THIRTY FOUR THOUSAND FIFTY ONE AND 681100 Dol: . . 34.051.68). This debt ls evidenced by Borrower's note dated the same date as this Secur1ty lns Note;, which provides for the full debt, if not paid earlier, due and payable on November 1, 2048.

This Security Instrument secures to♦) the repayment of the debt evidenced by the Note, and all renewals, extensions and modifications tif Not♦ (b) the payment of all other sums, with Interest, advanced under Paragraph 7 to protect the Jr of this Security Instrument; and (e) the performance of Borrower's covenants and agreements under • Secunty Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Tru n trust. with power of sale, the following described property located in the County of MASON, State of WASHINGTON:

See Exhibit "A" attached herato and made a part hereof;

which has the address of **391 E RAINIER DRIVE**, ALLYN, WA 98524 •Property Address•);

TOGETHER WITH all the 1mlEntA ents now or hereafter erected on the property, and all easements, appurte nances a♦n ures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing, ls referred to in this Security Instrument as the "Property:"

BORROWER COVFir11A rrS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered, except for e n c u m b r a n♦♦ ........,,,,, ower warrants and will defend generally the title to the Property against all claims an♦'"1♦ subject to encumbrances of record.

7'141S SEC♦ INSTRUMENT combines unlfonn covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. Payment of Principal. Borrower shall pay when due the principal ot the debt evidenced by the Note.
2. Borrower Not ReleaHCl; Forbeareince By Lender Not a Waiver. Extension of the time of payment of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate *to* release the liability of the original Borrower or Borrower's successor in interest Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.
3. Successors and Assigns Bound; Joint and Several Llability; Co-signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: {a} is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of



Washington Partial Claim Deed of Trust
316 8370 02/14



*(P4tle2of51)*

this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the term of this Instrument or the Note without that Borrower's consent

    **4.**     **Notices.** Any notice to Borrower provided fo o Security Instrument shall be given by delivering it or by mailing it by first class mail unless a �.� law requires use of another method. The notice shall be directed to the Property Address or a ther address Borrower designates by notice to Lender. Ally notice to Lender shall be given by first ss mail to: **Department of Housing and Urban Development, Attention: Single Family Notes Br h, 451 Seventh Street SW, Washington, DC 20410** or any address Lender designates by notice to Borrower. *Any* notice provided for in this Security Instrument shall be deemed to have been given to Sorrower or Lender when given as provided in this paragraph.

    **5,**     **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the roi,i� iS located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law. such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

    **6.**     **Borrower's Copy.** owe . ll be given one conformed copy of the Note and of this Security Instrument.

**NON-UNIFORM COVENANT� �** ower and Lender further covenant and agree as follows:

    **7.**     **Accele=on;'R�adie&.** Lender shall give notice to Borrower prior to acceleration following Borrower'& b of any covenant or agreement in this Security Instrument. The notice shall specify: (a) the d fau�te J'lhe action required to cure the default; (c) a date, not less than 30 days from the date the nciii� given to Borrower, by which the default must be cured; and (d) that failure to cure th• default on or before the date specified In the notice may result In acceleration ums secured by this Security Instrument and sale of the Property at public auction�t ss than 120 days in the future. The notice shall further inform Borrower of the right =u after acceleration, the right to bring a court action to assert the non- exi•e=f J Of any other defense of Borrower to acceleration and sale, and any other matte �, d to be Included in the notice by Applicable Law. If the default is not cured on or beton specified in the notice, Lc,nder at its option, may require Immediate payment In fUll of all SUJl\S� by this Security Instrument without further demand and may Invoke the power of saleAfidlor any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided In this Section 7, including, but not --::lllo'ril�t�.reaaonable attorney•• fees and costs of title evidence.

    If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee and Lender shall take such action regarding notice of sale and shall give such notices to �.... rwer and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notiee of sale, Trustee, without demand on Borrower, �----?ha†l sell the Property at public auction to the highest bklder at the time and place and under the terms designated in the notice of sale In one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property for a period or periods permitted by Applicable Law by public announcement at the time and place fixed in the notice of sale. Lender or Its designee may purchase the Property at any sale.

    Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or Implied. The recitals In the Trustee"s deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable

Wilsh/hqtoo/Pall/al Claim oe&d Of T•usl
316837002/14

(page 3 Of5)

Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the clerk of the superior court of the county in which the sale took place.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 4 of the Promissory Note, the Secretary may invoke the non-judicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided by the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to Lender under this paragraph or applicable law.

8.      **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs and the Trustee's fee for preparing the reconveyance.

9.      **Substitute Trustee.** In accordance with Applicable Law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

10.     **Use of Property.** The Property is not used principally for agricultural purposes.

11.     **Attorneys' Fees.** Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument. The term "attorneys' fees," whenever used in this Security Instrument, shall include without limitation attorneys' fees incurred by Lender in any bankruptcy proceeding or an appeal.

12.     **Bankruptcy Discharge.** If Borrower, subsequent to **October 12, 2022**, receives a discharge in a Chapter 7 bankruptcy, and there is no valid reaffirmation agreement of the underlying debt, Lender will not attempt to re-establish any personal liability for the underlying debt.

**ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument.

ERIN A SHARP -Borrower

Date: _13 10/22_

1 1 1 1 1 1 1 1 1 1 1 1 1 1 1
* 4 4 D 2 9 3 3 5    4 *
W PcmlCklmDwdofnual
316837002/M

9  2    5  8  +  3

(page 4 of 5)

UNOFFICIAL COPY

_____    [Space Below This Line For Acknowledgments]_____

State of Washington

eounty ot ___ Ih a s OQ

I certify that I know or have satisfactory evidence that ERIN A SHARP (name of person) is the person who appeared before me, a Notary Public and said person acknowledged that (he/she) signed this instrument and acknowledged it to be (his/her) free and voluntary act for the uses and purposes mentioned in the instrument.

Dated: _____ 11-08-2022

_____ Chan de
Signature of Notary

_____ AJ Jft,y Pt/ _____ /J
Title

My Commission expires: _____ 4-04-2025

CHAR (SMART
Nct,ry Publtc
Sut� Cf W1shtn1ton
Commtssi0n # •11521
My Comm. £xptres Apr 4, 2025

|||||||||||||||||
• 4 4 0   2 9 3   3 5 5 4 •
Wall1oton   CIERDeed rITilllt
316 8370 02/I4

|||||||||| ||||||
• 9 2   8 + 3 6 •
(page 5 of 5)



Er;:/;.,

**Loan N1Jmber: 4402933554**

**Property Address: 391 E RAINIER DRIVE, ALLYN, WA 98624**

**Legal Description:**

THE LAND REFERRED TO IN THIS COMMITMENT IS LOCATED IN THE COUNTY OF MASON, STATE OF WASHINGTON, AND DESCRIBED AS FOLLOWS: LOT 10, PLAT OF LAKELAND VILI.AGE NO. 8, RECORDED IN VOLUME 10 OF PLATS, PAGES 17 AND 18, RECORDS OF MASON COUNTY, WASHINGTON.



316 12338 06/18 Exhibit A Legal Description Attachment



Page 1 G 1